Edward CAPOCY, Plaintiff–Appellant,

v.

Susan KIRTADZE and Amtrak Railroad, Defendants–Appellees.

No. 98–2765.

United States Court of Appeals, Seventh Circuit.

Argued April 13, 1999.

Decided July 1, 1999.

Ivan M. Rittenberg (argued), Rittenberg & Buffen, Chicago, IL, for Plaintiff–Appellant.

Lela D. Johnson (argued), Sanchez & Daniels, Chicago, IL, for Defendants–Appellees.

Before KANNE, ROVNER, and DIANE P. WOOD, Circuit Judges.

KANNE, Circuit Judge.

In 1994, Edward Capocy sued his former employer National Railroad Passenger Corporation ("Amtrak") under the Federal Employees Liability Act ("FELA"), claiming injuries including permanent suffering from severe mental anguish. While this case was pending, Amtrak hired Comprehensive Rehabilitation Associates, Inc. ("CRA") to evaluate Capocy's injuries and provide him with vocational rehabilitation. Eventually, Amtrak settled the suit with Capocy, who signed a general release as part of the settlement agreement. Capocy asks us on appeal to consider the scope of this release.

When CRA began evaluating Capocy in response to his FELA claims, it assigned Sharon Shou, a Certified Rehabilitation Counselor and Certified Medical Case Manager, to oversee Capocy's case. Shou notified Capocy, through his attorney, of her role and also requested that he sign a consent form authorizing CRA to review and obtain copies of all of his hospital, medical, vocational, and other related records. The consent also permitted CRA to discuss these records with other professionals involved in the rehabilitation program, including his employer. Capocy signed the "consent"[1] in December 1994.

1. Under the Illinois Mental Health and Developmental Disabilities Confidentiality Act, "records and communications may be disclosed to someone other than those persons listed in Section 4 of this Act only with the written consent of those persons who are enti-

Pursuant to the terms of this document, Shou sent reports to Susan Kirtadze, who oversaw Capocy's case for Amtrak as a claims adjuster, and Capocy's attorney during Capocy's rehabilitation.

During this period, Capocy applied for social security disability benefits. To evaluate Capocy's application, the Illinois Department of Rehabilitation Services sent him to Dr. Richard Katz of Riverside Psychiatrics, who prepared a three-page evaluation of Capocy. In this report, Katz provided an evaluation of Capocy's mental health, concluding he harbored hostility toward both Amtrak and the judicial system. Capocy's attorney forwarded a copy of Katz's report to Shou. Capocy claims he did not know that Shou would in turn provide this report to Kirtadze.

In April 1995, Capocy settled his FELA claim against Amtrak for $260,000. As part of the settlement agreement, he signed the general release stating that he would relinquish any claims arising out of any injury then existing. When he signed this release, Capocy knew that Shou had sent a copy of Katz's report to Kirtadze.

In December 1996, Capocy filed suit in the Circuit Court of Cook County, Illinois, alleging that Kirtadze, Amtrak, Shou, and CRA violated his right to privacy under the Illinois Mental Health and Developmental Disabilities Confidentiality Act, 740 Ill. Comp. Stat. 110/1 *et seq.* ("Confidentiality Act"), when Shou forwarded Katz's report to Kirtadze. Amtrak removed the case to federal district court. The district court granted the defendants' motions for summary judgment, finding that because Capocy knew of the Confidentiality Act claim, which arose in connection with the FELA dispute, when he signed the release that unambiguously prohibited future claims arising out of those circumstances, the release barred him from bringing the action. Capocy appeals this decision, arguing that under Illinois law the issue of whether he "intended" to release the claim is one that should be decided by a jury and that the release clause, which specifically named federal and state and local disability statutes, does not apply to claims arising under statutes not mentioned specifically in the release, such as the Confidentiality Act. We agree with the district court's grant of summary judgment on this issue.

We review grants of summary judgment *de novo.* See *Tesch v. County of Green Lake,* 157 F.3d 465, 471 (7th Cir.1998). Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether a genuine issue of material fact exists, we construe all facts in the light most favorable to the nonmoving party and draw all reasonable and justifiable inferences in that party's favor. *See*

tled to inspect and copy a recipient's record pursuant to Section 4 of this Act." 740 Ill. Comp. Stat. 110/5(a). The consent must be in writing and specify:

(1) the person or agency to whom disclosure is to be made;
(2) the purpose for which disclosure is to be made;
(3) the nature of the information to be disclosed;
(4) the right to inspect and copy the information to be disclosed;
(5) the consequences of a refusal to consent, if any; and

(6) the calendar date on which the consent expires, provided that if no calendar date is stated, information may be released only on the day the consent form is received by the therapist; and
(7) the right to revoke the consent at any time.

*Id.* at 110/5(b). The document that Capocy signed does not contain the information required by subsections four through seven. Thus, although the parties refer to this document as "consent," it does not constitute written consent under the Confidentiality Act and, thus, does not control the outcome of this case as it otherwise might.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, neither "the mere existence of some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, 106 S.Ct. 2505, nor the existence of "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), is sufficient to defeat such a motion. We may affirm a district court's grant of summary judgment for any reason supported by the record. *See Fairchild v. Forma Scientific, Inc.*, 147 F.3d 567, 577 (7th Cir.1998).

■■■ While we recognize the importance of medical record confidentiality, we also note that the general protection provided by statutes protecting this right may be waived by the person holding that right. In these circumstances, courts cannot retroactively restore the protections an individual has chosen to relinquish. After examination of the record, we conclude that, under Illinois law, the disclosure of Katz's report was part of Capocy's FELA proceedings, and, thus, Capocy waived the protections of the Confidentiality Act with regard to this claim by signing the general release when settling his FELA suit.

■■■ Because federal courts decide diversity cases as if they were state courts, *see Shirley v. Russell*, 69 F.3d 839, 843 (7th Cir.1995), we consider Capocy's claim under Illinois law. Illinois courts consider a release to be a contract in which "a party relinquishes a claim to a person against whom the claim exists." *Carona v. Illinois Central Gulf R.R. Co.*, 203 Ill.App.3d 947, 148 Ill.Dec. 933, 561 N.E.2d 239, 242 (1990). Thus, it is subject to the rules of contract law. *See id.* While the "intention of the parties controls the scope and effect of the release," courts determine this intent "from the language used and the *circumstances of the transaction.*" *Carlile v. Snap-on Tools*, 271 Ill.App.3d 833, 207 Ill.Dec. 861, 648 N.E.2d 317, 321 (1995) (internal citation and quotation marks omitted). If no ambiguity exists, the question is a matter of law. *See Gavery v. McMahon & Elliott*, 283 Ill.App.3d 484, 219 Ill.Dec. 144, 670 N.E.2d 822, 824 (1996). Courts will not construe the words of a release to include claims not contemplated by the parties. *See Carona*, 148 Ill.Dec. 933, 561 N.E.2d at 242. If both parties are "aware of an additional claim at the time of signing the release, ... the general release language of the agreement will be given effect to release that claim as well." *Gavery*, 219 Ill.Dec. 144, 670 N.E.2d at 825. However, when parties use specific language in addition to words of general release in a release, courts limit the more general words to the particular claim arising out of the more specific reference. *See Carona*, 148 Ill.Dec. 933, 561 N.E.2d at 242.

Capocy claims that by specifying actions arising under the FELA, the Americans with Disabilities Act, the Rehabilitation Act of 1973, and "any State or Local Disabilities acts," the general release he signed requires him only to forgo claims under these statutes. Because his claim regarding the disclosure of his mental health records by Shou to Kirtadze arises under the Confidentiality Act, he reasons that the release does not bar this claim. We disagree.

The general release, which he signed April 20, 1995, unambiguously states that he releases:

all claims, demands, actions and causes of action of every kind whatsoever, *but without limitation of the foregoing*, all liability ... of any kind ... now existing or which may hereafter arise from or out of injuries and damages, known or unknown[,] ... including all liability under ... FELA, the Americans with Disabilities Act, the Rehabilitation Act of 1973 and any State or Local Disability acts[,] ... sustained or received [by him] while employed ... on or about March 29, 1994, [and the] suit of Edward Capocy v. National Railroad Pas-

senger Corporation ... to be forthwith dismissed, settled, agreed.

(emphasis added).[2] When describing the claims that Capocy is releasing by signing the agreement, the general release specifies three federal statutes and refers to state and local disability laws generally. In addition to referring to these statutes, the release states that he is relinquishing all claims, including those relating to these statutes, that arose out of his employment on the specified date and the FELA lawsuit he filed in state court. Capocy argues that the reference to the statutes in a release limits his release only to claims that arise under those statutes.

Capocy rests his argument upon the Illinois court's decision in *Carona*. In that case, the court concluded that a release stating that the employee released *all* claims "prior to and including" the date on which he had been injured while employed must be read as limiting the types of claims to those that arose out of "only those actions which would arise in the future from the [date of] accident." *Id.* at 242. That case is consistent with the release executed by Capocy. The text of the release demonstrates a general release of all claims and then specifies a date. In accordance with *Carona*, the specification of the date limits the initial general release

of all claims to those that arose on or about that date.

Capocy asks us to extend the Illinois court's reasoning and conclude that reference to specific statutes also limits the general language of the release. We decline to do so. First, in reaching its conclusion in *Carona*, the court stated that "[u]nder the law, this specific language reflects that the parties intended to release only those actions which would arise in the future from the July 1983 accident." *Id.* Thus, it was attempting to implement the intent of the parties when interpreting the contradictory language of the release. Capocy's suggestion that this reasoning should be extended to the reference to the statutes in his release with Amtrak is not appropriate in his case for two reasons.

First, Illinois courts have not squarely addressed how they would view the inclusion of such language; however, they have noted that courts should interpret releases under the rules governing contract construction. *See id.* One basic principle of contract interpretation imbues each word or phrase in the contract with meaning, rather than stripping them of significance. *See Epstein v. Yoder*, 72 Ill.App.3d 966, 29 Ill.Dec. 169, 391 N.E.2d 432, 437–38 (1979). In the release Capocy signed, the reference to the statutes is accompanied by the

2. The general release specifically states:

... I, Edward Capocy intending to be legally bound and for the sole consideration of Two Hundred Sixty Thousand and No/100 Dollars (260,000.00) less $4,680.00 representing the Railroad Retirement Board Lien, and less $3,375.00 previously received as advancements against settlement received to our full satisfaction from National Railroad Passenger Corporation [Amtrak], and without any other agreement, promise or representation, written or oral, we hereby release and forever discharge the said National Railroad Passenger Corporation, and all other parties, associations and corporations jointly or severally liable, _____ from all claims, demands, actions and causes of action of every kind whatsoever and including, but without limitation of the foregoing, all liability for damages, costs, expenses and compensation of any kind, nature or description now existing or which

may hereafter arise from or out of injuries and damages, known or unknown, permanent or otherwise, or at any other time or place prior to the exact date of this release, including all liability under the Federal Employer's Liability Act, (FELA), Americans with Disabilities Act, The Rehabilitation Act of 1973 and any State or Local Disability acts, sustained or received by Edward Capocy while employed as an Amtrak Material Control Clerk at or near Chicago, Illinois on or about March 29, 1994, suit of Edward Capocy v. National Railroad Passenger Corporation, Circuit Court of Cook County, Illinois, No.94L08662, ·to be forthwith dismissed, settled, agreed. As further consideration, the undersigned, Edward Capocy, as per the separate agreement attached, agrees to resign from employment from The National Railroad Passenger Corporation, Its affiliates or successors.

(emphasis deleted).

phrase "but without limitation of the foregoing." In addition, the statutes are set out in a long laundry list in which the parties designate what is included in the release. All of this language makes up the words of general release. While perhaps poorly drafted, the text indicates that the parties intended to include all claims, including those arising out of the statutes mentioned, but not limited to those. If they had wished to limit the claims only to those arising out of these statutes, they would not have used the phrase "but without limitation of the foregoing" or the term "including" (which implies these claims are part of the world of claims they were trying to settle).

Second, the purpose of this release, as the district court noted, was to "buy complete and total peace from" Capocy. To permit him to raise claims he knew existed at the time he signed the release and arose out of the claims that the parties were agreeing to settle once and for all would severely undercut the parties' willingness to enter into a settlement agreement. It could discourage parties from reaching such agreements by demonstrating that courts would second guess their agreements by interpreting the text of the agreements so narrowly as to permit claims all parties reasonably believed were being released when signing the document.

Therefore, we find that the reference to the specific statutes as examples of future claims does not limit the types of claims arising out of the specific date of employment and subsequent FELA claim that Capocy has agreed to forego. Next, we turn to whether the Capocy's confidentiality claim actually arose out of the incident referenced by the release.

■ The disclosure of which Capocy complains arises out of his FELA suit. Amtrak hired CRA to assess Capocy in relation to the injuries upon which he based his FELA claim. Shou, CRA's employee, requested and obtained from Capocy written "consent" that CRA could obtain and review "all hospital, medical,

vocational, and other related records" and "share the information received with any institution that through an insurance program or otherwise is paying all or part of the cost of [the] rehabilitation program." Amtrak paid for this program. Thus, in accordance with this document, Capocy had given Shou permission to provide a copy of Capocy's medical records to Kirtadze. Capocy does not claim Shou obtained Katz's report inappropriately; nor could he, because his own attorney provided her with a copy of it. He claims that her subsequent disclosure of the report to Kirtadze was the inappropriate action.

The key inquiry in Capocy's case is how the claim he now seeks to remedy arose. The facts demonstrate that the disclosure of which he claims arose out of his FELA action—if he had not brought that claim, Amtrak would not have sought the services of CRA, and CRA, through its employee Shou, would not have released the information Capocy's attorney gave her to Kirtadze, Amtrak's employee. While Katz clearly did not create his report as part of the FELA litigation, Capocy's attorney made it part of the action when he turned it over to Shou who disclosed it to Kirtadze only because of the relationship formed as a result of the FELA suit. Thus, because the disclosure arose out of his FELA claim based on the injury specified in the release and Capocy agreed to release all future claims that arose out of this suit, he has waived his right to raise this claim for violation of the Confidentiality Act.

■ Second, Capocy acknowledges that he knew of the actions that gave rise to his disclosure claim when he signed the general release. Illinois courts read general releases to include claims of which the parties were aware at the time of the release's execution. *See Gavery*, 219 Ill. Dec. 144, 670 N.E.2d at 825. Because Capocy knew of the disclosure when he signed the release, he relinquished his claims arising from this action at that time.

Because Capocy's claim under the Confidentiality Act arose in connection with his FELA suit upon which the general release was based and because he knew of the disclosure when he signed the release, we AFFIRM the district court's grant of summary judgment in favor of Kirtadze and Amtrak.