In the
United States Court of Appeals
For the Seventh Circuit

No. 99-2367

ALLEN FRAKE, in his capacity as Special
Administrator of the Estate of Robert Frake,

Plaintiff-Appellant,

v.

THE CITY OF CHICAGO, a municipal corporation,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 97 C 1221--James B. Zagel, Judge.

Argued February 16, 2000--Decided April 24, 2000

Before KANNE, DIANE P. WOOD, and EVANS, Circuit
Judges.

EVANS, Circuit Judge.  A person arrested in
Chicago is likely to find himself in a detention
facility at a district police station. Because of
a potential for suicide, lockup personnel at
detention facilities (jailers, in ordinary
English) are required to make observations of
people as they arrive--observations of signs of
pain or injury, of infection, of drug or alcohol
intoxication, despondency, and whether the person
is carrying medication. In addition, jailers must
ask the detainee whether he has ever tried to
commit suicide and whether he has any serious
medical or mental problems. Regardless of
observations and the answers given to the
questions, jailers also take away belts,
shoelaces, mufflers, ties, and other items which
could be converted into ligatures. After the
person is placed in a cell, the jailers check the
cell every 15 minutes. In addition, the district
watch commander and the desk sergeant are
required personally to inspect the lockup at
least twice during their tour of duty, which
results in a number of inspections which far
exceeds the one-inspection-per-hour requirement
in the State of Illinois "Municipal Jail and
Lockup Standards." If it seems likely that a
person is suicidal, other precautions are taken,
such as placing the person in a cell which can be

continuously observed and replacing the person's clothing with a paper suit. In addition, the City provides jail workers with training in suicide awareness.

Despite these precautions, which no one contends were neglected in this case, Robert Frake--who was arrested for possession of a small amount of cocaine--managed to hang himself in his cell at the District 12 Chicago Police Department lockup. His father, as administrator of Robert's estate, has brought this lawsuit/1 under 42 U.S.C. sec. 1983, claiming that the one thing which would have prevented Robert's suicide is the thing which was not done. The City had done nothing about the horizontal metal bars in the cells. It was from a horizontal bar that Robert Frake hanged himself with his jacket, which he had been allowed to keep. The task of the district court (and now us) is to look beyond the obvious and regrettable tragedy to determine whether the City deprived Robert Frake, a pretrial detainee, of his right to life in violation of the Due Process Clause of the Fourteenth Amendment. The district court thought not and granted summary judgment for the City, a decision which we review de novo under the familiar principle that summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. We construe all facts in the light most favorable to the nonmoving party and draw all inferences in his favor. Holtz v. J.J.B. Hilliard W.L. Lyons, Inc., 185 F.3d 732 (7th Cir. 1999).

The only defendant in this case is the City of Chicago. For liability to attach against a municipality under sec. 1983, a plaintiff must show that "deliberate action attributable to the municipality directly caused a deprivation of federal rights." Board of County Comm'rs v. Brown, 520 U.S. 397, 415 (1997). A plaintiff must show that municipal policymakers made a "deliberate choice" among various alternatives and that the injury was caused by the policy. Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986).

In this case it is Robert Frake's due process rights with which we are concerned. He was a pretrial detainee, not found guilty of a crime, and therefore he could not be "punished." For that reason, his treatment in the detention facility is analyzed under the Due Process Clause, rather than the Eighth Amendment's prohibition against cruel and unusual punishments. Bell v. Wolfish, 441 U.S. 520 (1979). But like the protection afforded a convicted prisoner under the Eighth Amendment, a detainee is protected from the "deliberate

indifference" of officials. County of Sacramento v. Lewis, 523 U.S. 833 (1998); Antonelli v. Sheahan, 81 F.3d 1422 (7th Cir. 1996). Specifically, when the claim is based on a jail suicide we have determined that the protection a detainee receives is the same as that received by an inmate claiming inadequate medical attention under the Eighth Amendment. Mathis v. Fairman, 120 F.3d 88 (7th Cir. 1997); Payne for Hicks v. Churchich, 161 F.3d 1030 (7th Cir. 1998), cert. denied, 119 S. Ct. 2339 (1999). A finding of deliberate indifference requires a showing that the officials were aware of a substantial risk of serious injury to the detainee but nevertheless failed to take appropriate steps to protect him from a known danger. Id. See also Farmer v. Brennan, 511 U.S. 825, 837 (1994); Salazar v. City of Chicago, 940 F.2d 233 (7th Cir. 1991). A defendant is not, however, required to guarantee the detainee's safety. The existence or possibility of other better policies which might have been used does not necessarily mean that the defendant was being deliberately indifferent. Manarite By and Through Manarite v. City of Springfield, 957 F.2d 953 (1st Cir. 1992).

Frake contends that the history of suicides in the Chicago detention facilities coupled with the fact that the City continues to put detainees alone in cells with horizontal cross-bars requires a conclusion that the City is, in fact, deliberately indifferent. He claims that from December 4, 1990, until November 18, 1997, there were 20 other suicides and 163 attempted suicides by hanging, a number which he finds convincing proof of the City's liability. The City says the figures are suspect and inadmissible, but in any case do not add up to deliberate indifference. It says that during that period the Chicago Police Department made 2,111,640 nontraffic arrests, which would mean, at most, that .0087 percent of arrests resulted in suicides or attempted suicides by hanging. The City does not argue that the number of suicides is acceptable, merely that it does not give rise to constitutional liability.

We do not think that numbers can tell the whole story. It is possible that one or two suicides coupled with other evidence could add up to deliberate indifference in a proper case. The fact of an unfortunate, but not outrageous, number of suicides, however, given other precautions which may be taken, might not. See Manarite.

Neither can the construction of the jail cells be viewed in isolation. As we have noted, many precautions are taken to ensure the safety of detainees. Given the fact that the City took

other precautions with detainees, we cannot find that the continued use of the cells as constructed equals deliberate indifference. See also Payne for Hicks.

Another factor which is instructive, but not conclusive, of the issue in this case is that the type of cell used in Chicago detention facilities is authorized by the State of Illinois Municipal Jail and Lockup Standards for new construction. The standards allow a steel grille or reinforced solid masonry. Frake does not present evidence that the City's cells or the Illinois standards fall outside the range of professional judgment about cell design.

The City is entitled to summary judgment. Frake has raised no genuine issue of material fact which might lead to a conclusion that the City maintains a policy which is deliberately indifferent to the risks of putting detainees in the existing cells. There is no evidence that anyone had knowledge that Robert Frake was suicidal. The screening process used in the detention facility is thorough. The lockup personnel receive training. There is no dispute that the cells are checked every 15 minutes or that obviously dangerous items are removed from the detainee's possession. The death of Robert Frake was a tragedy. But the record shows that as a matter of law the City of Chicago was not deliberately indifferent to his welfare. The decision of the district court is, therefore,

AFFIRMED.


/1 The case, originally filed in state court in Illinois, was removed by the City of Chicago to the federal District Court for the Northern District of Illinois.