In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-3766

STEPHEN J. WRAGG, JR.,

*Plaintiff-Appellant,*

*v.*

VILLAGE OF THORNTON, a municipal corporation,
JOHN KLACZAK, individually and as a agent of
Village of Thornton, and BOARD OF FIRE AND POLICE
COMMISSIONERS OF THE VILLAGE OF THORNTON,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 02 C 7680—**Robert M. Dow, Jr.**, *Judge.*

ARGUED APRIL 5, 2010—DECIDED MAY 7, 2010

Before EASTERBROOK, *Chief Judge*, and BAUER and
WOOD, *Circuit Judges*.

BAUER, *Circuit Judge.* The Village of Thornton's fire
chief John Klaczak molested Stephen Wragg, Jr., a sixteen-
year-old in the Village's fire cadet program. Wragg
sued the Village under 42 U.S.C. § 1983, asserting that

the Village violated his substantive due process rights under the Fourteenth Amendment by deliberately retaining Klaczak as fire chief despite knowledge of his prior improprieties with other minors. The district court granted summary judgment to the Village. We affirm.

## I. BACKGROUND

We begin our review of the district court's grant of summary judgment by reciting the factual background in the light most favorable to Wragg, construing all facts and reasonable inferences in his favor. *See, e.g., Ekstrand v. Sch. Dist. of Somerset*, 583 F.3d 972, 974 (7th Cir. 2009). We review only those facts whose substance would be admissible at trial under a form permitted by the Federal Rules of Evidence, although the form produced at summary judgment need not be admissible. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 327 (1986); *Johnson v. Weld County, Colo.*, 594 F.3d 1202, 1209-10 (10th Cir. 2010); *Alexander v. CareSource*, 576 F.3d 551, 558-59 (6th Cir. 2009); *Macuba v. Deboer*, 193 F.3d 1316, 1323-24 (11th Cir. 1999). Neither party has suggested that the district court either considered evidence it shouldn't have or failed to consider evidence it should have, so we recite the facts as the district court has given them to us, *see, e.g., O'Neal v. City of Chicago*, 588 F.3d 406, 409 (7th Cir. 2009) ("[A]rguments not raised on appeal are waived."), and as we otherwise find them in the record.

The Village of Thornton is home to about 2,400 people and is organized under the Illinois Municipal Code, 65 Ill.

Comp. Stat. 5, with six elected trustees and one elected president. At all times relevant to this appeal, the Village's president was Jack Swan.

President Swan learned in 1997 that the Village's police department had received a phone call from two anonymous parents claiming that Village police officer John Klaczak had molested their minor son. Five months later, Klaczak resigned his post as a police officer, seeking rehabilitation for cocaine addiction, a fact which Swan also learned.

Swan appointed Klaczak as the Village's fire chief in 1999. Later that year, Klaczak molested minor fire cadet Eric Bruinsma in a bathroom bar. During this act, another member of the fire department walked in on them. Klaczak molested Bruinsma on other occasions as well.

Stories of Klaczak's "propensity and his like for boys and oral sex and anal sex [and] booze parties" circulated throughout the fire department, R. 115-2 at 27, and on at least one occasion the stories were related to President Swan. *Id.* at 26-27. Fire department member Charlie Ryan once expressed to Swan that he should look into the fire cadet program, although he doesn't remember whether he asked Swan to investigate only Klaczak's hosting alcohol and drug parties that cadets attended, R. 115-3 at 36-39, or also "a rumor of [Klaczak] having sexual contact" with Bruinsma *Id.* at 79-80.

Klaczak molested Stephen Wragg in 2001, and was arrested about six months later; Swan removed Klaczak the same day he was arrested.

Wragg sued the Village (and others not relevant to this appeal) under 42 U.S.C. § 1983. He claimed that the Village deliberately retained Klaczak despite his known propensity to molest minors, and that the Village's deliberately indifferent employee retention policy caused a violation of Wragg's substantive due process rights.

The district court granted summary judgment to the Village, finding that the Village's final policymaker with respect to Klaczak's retention was the board of trustees, and that only one trustee had knowledge of Klaczak's sexual propensities. The court concluded that there could be no municipal liability for the isolated acts of only one member of a multi-member board. *Doe ex rel. Doe v. V. of T.*, No. 02-C-7680, 2008 WL 4450317, at **7-8 (N.D. Ill. Sept. 30, 2008) (citing *Rasche v. Vill. of Beecher*, 336 F.3d 588, 601 (7th Cir. 2003)). Moreover, the district court found that even were President Swan the Village's final policymaker, Wragg could not show that Swan's inaction "rose to the level of deliberate or reckless indifference as is required for municipal liability." *Id.* at *9.

## II. DISCUSSION

We review the district court's grant of summary judgment de novo. *Ekstrand*, 583 F.3d at 974. Summary judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that the Village is entitled to judgment as a matter of law. Fed R. Civ. P. 56(c). We may affirm the district court's grant of summary judgment for any reason supported by the record. *See Capocy v.*

*Kirtadze*, 183 F.3d 629, 632 (7th Cir. 1999); *Fairchild v. Forma Scientific, Inc.*, 147 F.3d 567, 577 (7th Cir. 1998).

The Fourteenth Amendment mandates that a state shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend XIV. A state usually need not protect its citizens from "private actors," *DeShaney v. Winnebago County Dept. of Soc. Servs.*, 489 U.S. 189, 195 (1989); *cf. Nabozny v. Podlesny*, 92 F.3d 446, 459 n.13 (7th Cir. 1996) (outlining factors indicating a custodial relationship in which states have an affirmative duty to protect from private actors), but it may not violate due process via one of its own actors. *Collins v. City of Harker Heights*, 503 U.S. 115, 126 (1992); *DeShaney*, 489 U.S. at 195; *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 723-24 (3d Cir. 1989). Klaczak was a governmental actor, not a private actor, as he undisputedly committed the abusive acts against Wragg in the line of his duty as fire chief. See Appellant's Br. at 5-6. So Wragg had a substantive due process right not to be harmed by Klaczak. *See Stoneking*, 882 F.2d at 725 (citing *City of Canton v. Harris*, 489 U.S. 378 (1989)) ("Nothing in *DeShaney* suggests that state officials may escape liability arising from their policies maintained in deliberate indifference to actions taken by their subordinates.").

The remainder of our inquiry concerns whether Klaczak's violation of Wragg's rights can impute liability to the Village. A village or other municipality may be found liable under § 1983 when it violates constitutional rights via an official policy or custom. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). (Or via a conspiracy, but

Wragg's evidence that a conspiracy occurred here is so lacking that we need not address it.) To establish an official policy or custom, a plaintiff must show that his constitutional injury was caused "by (1) the enforcement of an express policy of the [village], (2) a widespread practice that is so permanent and well settled as to constitute a custom or usage with the force of law, or (3) a person with final policymaking authority." *Latuszkin v. City of Chicago*, 250 F.3d 502, 504 (7th Cir. 2001) (citing *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000)).

Wragg has pointed to no Village policy that was express. Nor has he established a practice so permanent, well-settled, and widespread as to constitute custom or usage, because the moving force behind Wragg's injury is at least as likely to be the Village's "one-time negligen[ce] . . . peculiar to" Klaczak. *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 407-08 (1997) (citing *City of Canton*, 489 U.S. at 390-91); *see also Daniels v. Williams*, 474 U.S. 327, 328, 330 (1986) (finding that a denial of due process requires demonstrating a deprivation of liberty or property that is more than merely negligent); *Davidson v. Cannon*, 474 U.S. 344, 348 (1986) (same).

So Wragg is left with the third avenue of establishing municipal liability in which he must show that he was injured by a municipal official with "final policymaking authority." *City of St. Louis v. Prapotnik*, 485 U.S. 112, 123 (1988) (plurality opinion); *id.* at 142 (Brennan, J., concurring); *Latuszkin*, 250 F.3d at 504. Whether a particular official has final policymaking authority is a question of

state law, *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989) (citing *Prapotnik*, 485 U.S. at 123); *Rasche* , 336 F.3d at 600, including positive state law and "customs and practices having the force of [state] law." *Valentino v. Vill. of S. Chicago Heights*, 575 F.3d 664, 676 (7th Cir. 2009).

The Village contends that neither in the district court nor here did Wragg present "any argument as to which individuals in the Village possess final policymaking authority," *Doe*, 2008 WL 4450317, at *7, and that therefore his *Monell* claim is waived. *See, e.g., Bus. Sys. Eng'g, Inc. v. Int'l Bus. Machs. Corp.*, 547 F.3d 882, 889 n. 3 (7th Cir. 2008) ("Arguments not raised before the district court are waived on appeal."); *O'Neal*, 588 F.3d at 409 ("[A]rguments not raised on appeal are waived."). Another way to interpret Wragg's briefs, however, as he explained to us at oral argument, is that *all* the higher-ups he claims to have acted with deliberate indifference were final policymakers. We need not enter this debate about waiver because Wragg's *Monell* claim fails for other reasons. But in any event, trying to accuse every Village official, as a strategy to establish municipal liability, is unhelpful; it distracts the parties and courts from focusing on the particular final policymaker whose actions are essential to the claim.

The district court found conclusively that the final policymaker on the decision to retain Klaczak was the board of trustees. In *Rasche* we held that the board of trustees was the final policymaker "concerning zoning policy and enforcement." 336 F.3d at 600 (citing 65 Ill. Comp. Stat. 5/11-13-1). And we stated, "*Generally*, . . . the

policymaking authority in the city structure will be the city council, or here, the Board of Trustees." *Id.* at 601 (emphasis added) (citing *Auriemma v. Rice*, 957 F.2d 397, 399-400 (7th Cir. 1992)). But to cite *Rasche* for the proposition that the board of trustees, not the president, is the final policymaker on *every* policy decision is to miss the fact that we look to various factors in determining whether a certain individual or group has policymaking authority on any *particular* policy decision. They are: (1) lack of "constrain[ts] by policies" made by others; (2) lack of "meaningful review"; and (3) a "grant of authority" to make the policy decision. *Valentino*, 575 F.3d at 676, 677-78 (finding that the mayor, not the board of trustees, had final policymaking authority to hire and fire employees); *see Prapotnik*, 485 U.S. at 123; *Randle v. City of Aurora*, 69 F.3d 441, 448, 450 (10th Cir. 1995) (finding an issue of fact as to whether individual city officials or the city council had final policymaking authority in the area of personnel matters).

Although the board of trustees had final power to *appoint* and *remove* appointed officers, 65 Ill. Comp. Stat. 5/3.1-30-5, 35-10, there remains an issue of fact as to whether only President Swan had final power to *retain* appointed officers he had not removed. Swan's decision to retain Klaczak by not removing him was solely within his authority, 65 Ill. Comp. Stat. 5/3.1-35-10, and not subject to meaningful review. *Id.* So whether Swan had the final power to retain Klaczak turns on whether his non-removal of Klaczak was constrained by any policy made by others. *Prapotnik*, 485 U.S. at 123; *Valentino*, 575 F.3d at 676.

We cannot tell from the record whether Swan was so constrained by the Village's policy against sexual harassment. *Cf. Auriemma*, 957 F.2d at 399 (finding that the city's anti-discrimination policy constrained executive action "unequivocally"). The policy states that those found to be offenders will face "appropriate disciplinary action," not necessarily removal. R. 99-3 at 2. Moreover, the Village does not argue that the policy required Swan to actively investigate Klaczak's behavior in lieu of retaining him. Nor can we tell from the written policy whether the duty to investigate fell on Swan or some other official(s) or whether such a duty was triggered by the information Swan received. *See id.* (requiring "the Village" to investigate "sexual harassment complaints"). If the Village's sexual harassment policy imposed a duty on Swan to investigate Klaczak after receiving the information he had learned, then the policy's enactor, the board of trustees, was the Village's final policymaker on the decision to retain Klaczak. If it imposed no such duty, Swan was thus unconstrained, so he was the final policymaker. *Prapotnik*, 485 U.S. at 123; *Valentino*, 575 F.3d at 676.

In any event, Wragg's claim fails. Wragg presents no evidence from which a reasonable jury could find that either the board of trustees or Swan *knew* that maintaining Klaczak in employment would pose a "substantial risk" of a constitutional violation. *Frake v. City of Chicago*, 210 F.3d 779, 782 (7th Cir. 2000); *see Bd. of County Comm'rs*, 520 U.S. at 407 (finding that municipal liability attaches only where the final policymaker acts "with deliberate indifference as to . . . known or obvious

consequences") (internal quotation marks omitted); *Riccardo v. Rausch*, 375 F.3d 521, 526 (7th Cir. 2004) (noting that the "deliberate indifference" standard requires "subjective awareness. . . . It is not enough that the [defendant] *ought* to have recognized the risk.") (emphasis in original).

As to the board of trustees, we agree with the district court that there can be no municipal liability for the isolated acts of only one member of a multi-member board. *See Mason v. Vill. of El Portal*, 240 F.3d 1337, 1340 (11th Cir. 2001); *Church v. City of Huntsville*, 30 F.3d 1332, 1343 (11th Cir. 1994). Wragg presents evidence relevant to the knowledge only of one trustee, and makes no effort to impute knowledge of Klaczak's prior misbehavior to a quorum of the board. Such evidence is insufficient to find inaction by the board giving rise to the Village's liability.

As to Swan, no reasonable jury could find that he acted with such knowledgeable, deliberate indifference that the Village could be liable for his inaction. Swan encountered various storm warnings about Klaczak, but none sufficiently alerted Swan such that Klaczak's propensity to molest minors could be found "known or obvious" to him. *Bd. of County Comm'rs*, 520 U.S. at 407.

First, Swan heard about a complaint that Klaczak had molested a child while Klaczak was on the police force, but the parents remained anonymous, provided no specifics, and enabled no investigation. *Cf. Jones v. City of Chicago*, 787 F.2d 200, 207 (7th Cir. 1986) (finding no deliberate indifference where the city doubly inves-

tigated a prior complaint). No reasonable jury could find that the anonymous parents' unsubstantiated accusation made Klaczak's tendencies known or obvious to Swan, who testified that he knew Klaczak his whole life, disbelieved that Klaczak was a child molester, and was unaware of any sexual misconduct between Klaczak and the Village's fire cadets until Klaczak was arrested.

Second, Swan witnessed various fire department members commenting to each other on Klaczak's propensity to molest young boys. But numerous witnesses testified that such stories circulated about other fire department members as well, and that the stories were generally understood to be nothing but banter, cruel humor, and typical firehouse antics. Wragg makes no effort to rebut this testimony, and so again no reasonable jury could find that Swan was actually aware of Klaczak's tendencies.

Third, Swan might have heard from Ryan that Klaczak engaged in sexual contact with cadets—Ryan doesn't recall whether he told Swan. *Compare* R. 115-3 at 36-39 *with id.* at 79-80. Moreover, Ryan admits that the basis of his knowledge of Klaczak's sexual misconduct was only "through rumors." *Id.* at 35:12-18. Ryan's deposition testimony is both too "ambiguous" and too "speculative" as to whether Swan actually knew about Klaczak's sexual misconduct, such that it cannot defeat summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 595 (1986).

Finally, Swan heard from Ryan about Klaczak's alcohol and drug-related misbehavior with cadets. However,

Swan's knowledge of Klaczak's alcohol and drug-related misbehavior with cadets, coupled with his knowledge of Klaczak's prior cocaine addiction, do not give rise even to speculation about sexual misconduct, which is unrelated.

## III. CONCLUSION

The Village is not liable for retaining Klaczak because: (1) a quorum of the Village's board of trustees had no knowledge of his prior sexual misconduct; and (2) even if the Village's policy against sexual harassment lacked the teeth to constrain President Swan such that he wielded the Village's ultimate power to retain Klaczak, Wragg presented insufficient evidence for a reasonable jury to find that Swan knew that retaining Klaczak posed a substantial risk to Wragg. Swan might have acted negligently, but Wragg presented insufficient evidence to find that he acted more culpably as is required to find liability against the Village. Therefore, we AFFIRM.