In the

# United States Court of Appeals

### For the Seventh Circuit

No. 11-1949

RENAE EKSTRAND,

*Plaintiff-Appellee,*

*v.*

SCHOOL DISTRICT OF SOMERSET,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 08 C 193—**Barbara B. Crabb**, *Judge.*

ARGUED FEBRUARY 21, 2012—DECIDED JUNE 26, 2012

Before EASTERBROOK, *Chief Judge*, BAUER, *Circuit Judge*, and SHADID, *District Judge.*[*]

BAUER, *Circuit Judge*. The plaintiff-appellee, Renae Ekstrand, sued the School District of Somerset, Wisconsin, under the American with Disabilities Act

---

[*] The Honorable James E. Shadid, District Judge of the United States District Court for the Central District of Illinois, sitting by designation.

(ADA), alleging that the school district failed to accommodate her disability in violation of the statute. The school district moved for summary judgment, which the district court granted. We reversed that ruling in part, holding that there was a triable issue of fact as to whether Ekstrand was a qualified individual with a disability within the meaning of the ADA and as to whether the school district was aware of that disability. *Ekstrand v. School Dist. of Somerset*, 583 F.3d 972 (7th Cir. 2009). The case went to trial. After the jury returned a verdict in favor of Ekstrand, the school district moved for judgment as a matter of law under Rule 50(b), challenging the sufficiency of the evidence. The district court denied the motion, and the school district timely filed this appeal. We affirm.

## I. BACKGROUND

Ekstrand taught kindergarten at Somerset Elementary School from 2000 to 2005. In the spring of 2005, she asked to be reassigned to teach a first-grade class, and the school agreed. She was relocated to a first-grade classroom with no exterior windows in a busy, loud area of the school. Ekstrand spoke with her principal several times to request a change of classroom, and although the principal worked to make the existing classroom more hospitable, she denied her requests to switch rooms.

In the fall of 2005, after the school year began, Ekstrand began to experience symptoms of seasonal affective disorder, a form of depression. Both her psychologist, Dr. Randi Erickson, and her primary care physician,

Dr. Arnold Potek, recommended that she take a leave of absence due to illness. Her initial leave was only three months, but the following winter, her doctor wrote to the school district to advise that Ekstrand would be unable to return to teach for the remainder of the 2005-06 school term. That leave of absence was then later extended to include the 2006-07 school term.

The events most relevant to the current dispute occurred in the time period after Ekstrand received her initial three-month leave of absence but before the leave was extended for the rest of the school year (roughly the time between October of 2005 and January of 2006). When the case went to trial, the parties argued over whether Ekstrand was ever emotionally capable of returning to work during that time period and whether the school district was aware of her capability to return. For example, a letter from Dr. Erickson dated November 28, 2005, was delivered to the school district's office. The letter detailed Dr. Erickson's opinion that natural light was crucial to Ekstrand's recovery and that her classroom without windows had been a major cause of her condition. This letter backed up Ekstrand's prior conversations with both the superintendent and the school principal in which she had communicated the importance of natural light to her recovery (and again, we reiterate, school officials refused each request for a classroom change).

What follows are just a few of the more relevant factual developments that came out at trial. The school superintendent testified, stating that although Dr. Erickson's November 28 letter was delivered to his

office's business manager, he never saw it until he became aware of Ekstrand's lawsuit much later in 2006. The school principal also testified about conversations she had with Ekstrand in which Ekstrand requested a new room with exterior windows. Finally, Dr. Erickson testified that Ekstrand would have been capable of returning to work from October 18 to December 14 if she had been provided a classroom with natural light.

This case now comes before us for the second time. Initially, the school district had filed a motion for summary judgment; the district court granted that motion and we reversed in part, finding that a genuine issue of material fact existed for resolution. This led to a jury trial in the district court to decide the contested issues. Ekstrand won her case, and now the school district appeals the denial of its Rule 50(b) motion. This time around, we confine our discussion to the issues relevant to the school district's two specific challenges: whether there was sufficient evidence for a jury to find that Ekstrand was a qualified individual with a disability under the ADA, and whether there was sufficient evidence for a jury to find that the school district knew of that disability within the relevant time period.

## II. DISCUSSION

We review the district court's denial of a Rule 50(b) motion for judgment as a matter of law de novo, viewing the evidence available to the jury in the light most favorable to Ekstrand. *Waters v. City of Chicago*, 580 F.3d 575,

580 (7th Cir. 2009) (citations omitted). We will only reverse if no reasonable juror could have found in Ekstrand's favor. *Id.*

We begin our analysis by recounting the relevant standard under the ADA. Ekstrand's burden at trial was to show that (1) she is a qualified individual with a disability; (2) the school district was aware of her disability; and (3) the school district failed to reasonably accommodate that disability. *See, e.g., King v. City of Madison*, 550 F.3d 598, 600 (7th Cir. 2008). The school district only challenges Ekstrand on prongs (1) and (2), arguing that no reasonable jury could have found for her on those grounds. So was there sufficient evidence for a reasonable jury to decide that Ekstrand was a qualified individual with a disability and that the school district knew of that disability? There are several conclusions that reasonable jurors may have drawn given the evidence in this case. Here are just a few: they may have credited Ekstrand's own testimony over the superintendent's on key issues; they may have found Dr. Erickson convincing when he testified that Ekstrand could have returned to her teaching duties between October and December provided she had a classroom with natural light; and they may have decided not to credit the superintendent's testimony that he was late in reading Dr. Erickson's letter regarding the importance of natural light to Ekstrand's recovery.

Again, these are just a few possibilities. Taken together, these determinations could lead a reasonable jury to conclude that Ekstrand was a qualified individual with

a disability in October through early December and that the school district knew about it, but failed to accommodate her with a new classroom. The point is, we are generally forbidden from reexamining the facts found by the jury at trial. *See* U.S. CONST. amend. VII. Ekstrand's case was convincing to these jurors, and the school district cannot now retry the case in the appellate court.

This challenge to the sufficiency of the evidence is particularly weak because we essentially decided these very same issues in Ekstrand's favor the last time this case was before us. *See Ekstrand v. School Dist. of Somerset*, 583 F.3d 972 (7th Cir. 2009). When Ekstrand appealed the entry of summary judgment against her in 2009, we held that a genuine issue of material fact existed both as to whether (1) Ekstrand was a qualified individual with a disability during the relevant time period, and (2) as to whether the school district was aware. *Id.* at 977. By that, we simply meant that Ekstrand had presented enough evidence for a reasonable jury to find in her favor on those issues. The standard under Rule 50(b) presents us with the same question, and the school district has not raised any new legal theory that was not present in 2009. Instead, the school district hinges its argument on various factual developments at trial that it believes bolsters its case. But as we noted at oral argument, unless evidence favoring Ekstrand in the pretrial stage has since *vanished* (and there is no allegation that it has), we are presented with the same situation as before. Just as there was sufficient evidence for a possible verdict in Ekstrand's favor on these very issues in the last appeal, so is there ample evidence at the post-

trial stage for a reasonable jury to have found in Ekstrand's favor.

### III.  CONCLUSION

For the aforementioned reasons, the district court's order denying the school district's 50(b) motion is AFFIRMED.