SYKES, Circuit Judge.
Sherry Katz-Crank is a Michigan lawyer with a practice in cemetery management. An unscrupulous client used her services in the course of defrauding cemetery trust funds of $22 million. When Katz-Crank discovered the fraud, she promptly contacted state regulatory authorities. The client was indicted on embezzlement charges. Katz-Crank was charged as-an aider and abettor, though a jury would ultimately acquit her.
Her reputation disgraced and her law practice in shambles, Katz-Crank sued the state and county officials who were in any way involved in the prosecution. She alleged that they conspired to violate her federal constitutional rights; she raised several state-law claims as well. The district judge entered judgment on the pleadings in the defendants’ favor on some claims and dismissed others for failure to state a claim.
We affirm. Most of Katz-Crank’s claims are barred by the Eleventh Amendment or prosecutorial immunity. The balance of the complaint was properly dismissed for failure to state a plausible claim for relief.
I. Background
The case was resolved on the pleadings, so the following factual summary is from Katz-Crank’s complaint. Katz-Crank is a lawyer from Michigan with a practice in the esoteric field of cemetery management. In 2004 Robert Nelms retained her to assist in his acquisition of cemeteries and funeral homes in Indiana, Michigan, and Ohio. The, trust funds associated with these cemeteries were valued at about $22 million.[1] In 2007 Katz-Crank learned that Nelms was under investigation by the Indiana Secretary of State for misappropriating cemetery trust assets.
Katz-Crank promptly called Kimberly Haskett, an investigator in the Secretary of State’s office, to offer her full cooperation m the, investigation. Haskett did not return the call. Apparently she didn’t need Katz-Crank’s help; in 2008 Nelms was indicted on charges. of embezzling $22 million in cemetery trust funds.[2] He pleaded guilty pursuant to a- plea .bargain and agreed to testify against Katz-Crank.
Although Haskett never returned Katz-Crank’s call, she did find time to contact some of her clients to advise them that *646 Katz-Crank was under criminal investigation. In July 2008 Katz-Crank was charged in Marion County with aiding and abetting Nelms’s embezzlement. She was arrested that month, and both the Indiana Secretary of State and the Marion County prosecutor’s office issued press releases publicizing the arrest.[3] On December 7, 2010, a jury acquitted Katzr-Crank of all charges.
Exactly two years later Katz-Crank filed suit in federal court against Marion County and multiple state and county officials who were directly or indirectly involved in the criminal investigation and prosecution. The state defendants are former Indiana Secretary of State Todd Roki-ta, Haskett, and Charlie Williams, another investigator in the Secretary of State’s office. The county defendants are former Marion County Prosecutor Carl Brizzi, former Deputy Prosecutor Mary Hutchinson, former Deputy Prosecutor Barbara Crawford, Investigator Thomas Trathen, and Marion County itself.
The number of claims is no less multitudinous. Katz-Crank brought federal claims under 42 U.S.C. § 1983 for malicious prosecution, “abuse of process,” and violation of the Fourth and Fourteenth Amendments; three federal conspiracy claims (one each under § 1983 and 42 U.S.C. §§ 1985(3) and 1986); and state-law claims for malicious prosecution, abuse of process, and intentional infliction of emotional distress. The defendants were sued in their official and individual capacities.
The defendants moved variously for lodgment on the pleadings under Rule i-2(c) of the Federal Rules of Civil Procedure and for dismissal under Rule 12(b)(6) for failure to state a claim. The judge entered judgment on the pleadings in the defendants’ favor on some of the federal claims, dismissed others with prejudice under Rule 12(b)(6), and dismissed the state-law claims with leave to replead. Katz-Crank filed an amended complaint limited to the state-law claims. It too was dismissed for failure to state a claim, this time with prejudice. This appeal followed.
II. Discussion
Our review is de novo. Barr v. Bd. of Trs. of W. Ill. Univ., 796 F.3d 837, 839 (7th Cir. 2015). We don’t need to parse which of Katz-Crank’s claims were resolved under Rule 12(c) and which were resolved under Rule 12(b)(6); “[a] motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is subject to the same standard as a Rule 12(b)(6) motion to dismiss.” United States v. Wood, 925 F.2d 1580, 1581 (7th Cir. 1991). To survive a Rule 12(b)(6) motion, the complaint must “state a claim for relief that is plausible on its face.” Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). We accept the allegations in the complaint as true unless they are “threadbare recitals of a cause of action’s elements, supported by mere conclusory statements.” Ashcroft v. Iqbal, 556 U.S. 662, 663, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).
A. Federal Claims
1. Claims Against the State and County
We begin with the federal claims against Marion County and against the *647 state and county officials in their official capacities, which are the equivalent of claims against the state and county. See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101-02, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (state officials); Grieveson v. Anderson, 538 F.3d 763, 771 (7th Cir. 2008) (county officials). These claims can be quickly dispatched.
The Eleventh Amendment bars suit in federal court against nonconsenting states absent some specific types of congressional authorization not applicable here.[4] See Pennhurst, 465 U.S. at 101-02, 104 S.Ct. 900; see also Va. Office for Prot. & Advocacy v. Stewart, 563 U.S. 247, 253-54, 131 S.Ct. 1632, 179 L.Ed.2d 675 (2011). Accordingly, all claims against the state officials in their official capacities were properly dismissed on Eleventh Amendment grounds.
Marion County is a “person” under § 1983 and may be held liable for violating Katz-Crank’s federal rights if its policies or customs caused the violation. Monell v. Dep’t of Soc. Servs., 436 U.S. 658, 690-91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The complaint alleges lots of individual misconduct by county officials, but it nowhere identifies any county policy or custom that caused Katz-Crank’s injury. Katz-Crank’s brief does not fill the gap. That dooms the claims against the County itself (and by extension, the claims against the county officials in their official capacities). See id. at 694, 98 S.Ct. 2018; see also Grieveson, 538 F.3d at 771.
2. Claims Against the Marion County Prosecutors
Katz-Crank also brings several federal claims against three Marion County prosecutors in their individual capacities. Prosecutors are protected by robust immunity from federal tort liability, “whether common law or constitutional, ... for acts they commit within the scope of their employment as prosecutors.” Fields v. Wharrie, 740 F.3d 1107, 1110 (7th Cir. 2014) (citations omitted). Katz-Crank’s federal claims against the prosecutors implicate conduct within the scope of this broad immunity.
Katz-Crank alleges that the prosecutors (1) indicted her without probable cause; (2) made false and inflammatory public statements in press releases; (3) acted “maliciously”; (4) refused to consider exonerating evidence she tried to give them; (5) presented false evidence to the grand jury; and (6) delayed her trial. Most of these allegations encompass prosecuto-rial acts or omissions for which the Marion County prosecutors enjoy absolute immunity. See Bianchi v. McQueen, 818 F.3d 309, 318 (7th Cir. 2016) (explaining that absolute immunity covers “what goes on in the courtroom” and grand-jury proceedings); id. -(“[I]t’s clear that absolute immunity knocks ... the [plaintiffs] claims premised on allegations that [the prosecutor] presented false statements to the grand jury and at trial.”).
The only close call is the allegation about false and inflammatory public statements in press releases, which arguably falls outside the immunity shield. The Supreme Court has held that a prosecutor’s “statements to the media are not entitled to absolute immunity.” Buckley v. Fitzsimmons, 509 U.S. 259, 277, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993). But a close reading of the complaint reveals that this allegation—made only very generally, *648 without identifying any particular false statement — appears in the complaint’s description of the means by which the defendants conspired to deprive Katz-Crank of her federal rights in violation of § 1983. As we’ll , explain in a moment, the § 1983 conspiracy claim fails because the complaint doesn’t state a claim for any underlying constitutional tort. So even if this particur lar allegation doesn’t fall within the scope of prosecutorial immunity, it does not support a cognizable federal claim for relief.
3. Claims Against the State Officials and Investigators
The state officials and the county investigators do not enjoy absolute immunity from suit in their individual capacities, so we turn now to the substance of the federal claims against them. Katz-Crank brings claims under § 1983 for malicious prosecution, abuse of process, and a violation of the Fourth and Fourteenth Amendments. The complaint doesn’t identify any constitutional basis for the first two claims, and Katz-Crank’s brief doesn’t either. Indeed, her brief doesn’t address the substance of these claims at all; she focuses instead on the scope of the defendants’ immunity under the Indiana Tort Claims Act.
We’re not inclined to construct a constitutional basis for Katz-Crank’s claims when she has failed to do so herself. In the interest of completeness, however, we note that the Fourth Amendment claim doesn’t appear to be one for false arrest; that claim would be time-barred in any event. See Wallace v. Kato, 549 U.S. 384, 391, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007) (explaining that the limitations period for a Fourth Amendment claim for arrest without probable cause begins to run when the detainee appears before a magistrate). Rather, the Fourth Amendment claim appears to be simply a repackaged claim for malicious prosecution.
Our circuit doesn’t permit, this maneuver; we’ve held that a federal claim for malicious prosecution implicates (or at most may implicate) the right to due process, not the Fourth Amendment, and that no federal malicious-prosecution claim is available if state law provides a similar cause of action. Newsome v. McCabe, 256 F.3d 747, 750-51 (7th Cir. 2001).[5] Indiana does provide a remedy for malicious prosecution, but the Indiana Tort Claims Act confers on public employees a broad immunity' from suit for acts committed within the scope of their employment. Ind. Code § 34-13-3-3(6); see also Serino v. Hensley, 735 F.3d 588, 593-95 (7th Cir. 2013) (recognizing that the Indiana Tort Claims Act grants broad immunity to governmental employees from suit for malicious prosecution and intentional infliction of emotional distress). We’ve held that this statutory immunity effectively blocks a common-law claim of malicious prosecution against governmental officers in Indiana, and this in turn “opens the door to federal malicious prosecution suits against such officers.” Julian v. Hanna, 732 F.3d 842, 848 (7th Cir. 2013); Hart v. Mannina, 798 F.3d 578, 587 (7th Cir. 2015).
As we’ve noted, however, Katz-Crank hasn’t made this argument because she hasn’t bothered to-identify the basis of her federal claims (other than pointing very generally to the Fourth and Fourteenth Amendments). Nor has she made any effort to explain how the allegations-in her complaint suffice to state a federal malicious-prosecution claim. Our own review convinces us that they do not.
*649 We’ve held that a federal malicious-prosecution claim (if one is available at all) borrows the elements of the state tort. See Hart, 798 F.3d at 593. The law of malicious prosecution in Indiana requires the plaintiff to prove the following elements: (1) the defendant “instituted or caused to be instituted an action against the plaintiff’; (2) the defendant acted with malice and (3) without probable cause; and (4) the action “was terminated in the plaintiffs favor.” City of New Haven v. Reichhart, 748 N.E.2d 374, 378 (Ind. 2001).
Katz-Crank’s claim fails on the first of these requirements. She hasn’t alleged that the former Secretary of State or any of the investigators — state or county— either instituted the prosecution against her or caused it to be instituted. She has not alleged, for example, that these defendants plied the prosecutors with evidence they knew to be false or otherwise duped the prosecutors to indict her without probable cause. See Alexander v. United States, 721 F.3d 418, 423 (7th Cir. 2013) (explaining that under Indiana law a malicious-prosecution claim can be made against a defendant who did not himself initiate the prosecution when the prosecution is initiated solely based on information provided by the defendant); Bah v. Mac’s Convenience Stores, 37 N.E.3d 539, 547 (Ind. Ct. App. 2015) (holding that a claim for malicious prosecution is not available when a prosecutor makes “an independent determination of whether to pursue criminal charges”). Accordingly, Katz-Crank failed to state a federal claim of malicious prosecution against the state officials and the county investigator.[6]
To the extent that Katz-Crank’s § 1983 claim could be construed as an equal-protection claim, it likewise fails. The only conceivable way to conceptualize such a claim in .the -context of this case is under a “class of one” theory. See Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000). But a class-of-one claim cannot be used to challenge discretionary governmental action, like the decision to initiate prosecution. See Engquist v. Or. Dep’t of Agric., 553 U.S. 591, 603-04, 128 S.Ct. 2146, 170 L.Ed.2d 975 (2008); Avila v. Pappas, 591 F.3d 552, 554 (7th Cir. 2010) (“[C]lass-of-one claims cannot rest on governmental activity that is discretionary by design, a good description of prosecutorial selectivity in criminal law.”) (citation omitted). Even if a class-of-one claim were available, Katz-Crank hasn’t alleged that she was treated differently than others similarly situated, an essential element of the claim. See United States v. Moore, 543 F.3d 891, 896-97 (7th Cir. 2008) (explaining the “similarly situated” requirement).
Finally, we return now to the allegation that some of the defendants gratuitously inflicted reputational harm on Katz-Crank. As we’ve noted, the complaint alleges, that Investigator Haskett contacted Katz-Crank’s clients and advised them that she was under criminal investigation. It also alleges that the former Secretary of State and the Marion County prosecutor’s office issued inflammatory press releases announcing her arrest. These allegations may form the basis of an actionable defamation claim, but Katz-Crank has made no effort to fit them within any recognized constitutional doctrine. ... .
The Due Process Clause is not “a font of tort law to be superimposed upon whatever systems may already be *650 administered by the States.” Paul v. Davis, 424 U.S. 693, 701, 96 S.Ct. 1156, 47 L.Ed.2d 405 (1976). Katz-Crank has not alleged that the defendants altered her legal status in some way, or impaired her employment prospects with the government, or deprived her of a right she once held, or revoked a license “recognized and protected by state law.” See id. at 704-05, 96 S.Ct. 1155 (legal status); id. at 705-06, 709-10, 96 S.Ct. 1155 (governmental employment); id. at 707, 96 S.Ct. 1155 (right once held); id. at 710-11, 96 S.Ct. 1155 (license). She alleges only that they damaged her reputation. But “reputation alone, apart from some more tangible interests,” is neither liberty nor property “by itself sufficient to invoke the procedural protection of the Due Process Clause.” Id. at 701, 96 S.Ct. 1155; id. at 712, 96 S.Ct. 1155 (“[Petitioners’ defamatory publications, however seriously they may have harmed respondent’s reputation, did not deprive him of any ‘liberty’ or ‘property’ interests protected by the Due Process Clause.”).
Not much more is needed to resolve the remaining federal claims. Without a viable federal constitutional claim, the conspiracy claim under § 1983 necessarily fails; there is no independent cause of action for § 1983 conspiracy. Cefalu v. Village of Elk Grove, 211 F.3d 416, 423 (7th Cir. 2000). The § 1985(3) claim lacks allegations of racial or class-based discriminatory animus, a required element. Smith v. Gomez, 550 F.3d 613, 617 (7th Cir. 2008) (“Section 1985(3) prohibits a conspiracy to deprive another of equal protection under the law ..., but the conspiracy must be motivated by racial[ ] or other class-based discriminatory animus.”). The failure of the § 1985 claims also defeats the § 1986 claim. See id.
B. State-Law Claims
What remains are the state-law claims, which the judge dismissed on the merits after giving Katz-Crank an opportunity to replead. Katz-Crank argues that the judge was wrong to apply Indiana law; she insists that Michigan law applies instead. Not so. Indiana’s choice-of-law rules apply, see Klaxon Co. v. Stentor Elec. Mfg., 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), and Indiana looks to the location of “the last event necessary to make [the defendants] liable for the alleged wrong” and then examines “whether the place of the tort” is sufficiently connected to the legal action. Simon v. United States, 805 N.E.2d 798, 805-06 (Ind. 2004) (quotation marks omitted). The course of conduct alleged here — the investigation, indictment and trial — occurred in Indiana. And it cannot seriously be argued that Indiana has only a tenuous connection to an alleged wrongful prosecution that took place in the Hoosier state. Indiana law applies.
The merits require only summary attention. The Eleventh Amendment prevents us from adjudicating the state-law claims against the state officials in their official capacity. Pennhurst, 465 U.S. at 121, 104 S.Ct. 900 (“[A] claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment.”). The state-law claims against the defendants in their individual capacities are barred by Indiana’s statutory immunity. The Indiana Tort Claims Act provides that a “governmental entity or an employee acting within the scope of the employee’s employment is not liable if a loss results from ... [t]he initiation of a judicial or an administrative proceeding.” Ind. Code § 34-13-3-3(6); id. § 34-6-2-38(a) (defining “employee” as a person acting on behalf of a governmental entity, including elected officials); id. § 34- *651 6-2-49(a) (defining “governmental entity” as the state and any political subdivisions).
The Indiana Supreme Court interprets “scope of employment” broadly enough to encompass all of the allegations here. Specifically, the term includes any conduct “of the same general nature as that authorized” by the public employer, conduct “incidental to the conduct authorized” by the employer, and conduct done “to an appreciable extent[ ] to further [the] employer’s business.” Bushong v. Williamson, 790 N.E.2d 467, 473 (Ind. 2003) (quotation marks omitted). All of the conduct alleged here falls comfortably within the state immunity bar. The state-law claims were properly dismissed.
Affirmed.

. To provide for the perpetual maintenance of cemeteries, states customarily require cemeteries to hold a portion of their assets in trust. See-generally Ind. Code §§ 23-14-49-1, 23-14-51-2.

. Nelms was not the first of Katz-Crank’s clients to embezzle cemetery trust funds. In 2004 she represented Clayton Smart during his purchases of Michigan cemeteries valued at $45 million. Katz-Crank , later discovered that Smart had misappropriated trust funds and reported the theft to -the authorities. Smart was convicted of fraud.

.' For example, the press release posted on the Indiana Secretary of State’s website stated as follows: "Crime can be violent, or can be executed using white-collar weapons like a pen, a briefcase, or in [Katz-Crank’s] case, a cemetery plot. Our office will continue to work effectively with other parts of government, like [Marion County Prosecutor] Carl’s office, to ensure we get results....” Press Release, Ind. Sec’y of State, Secretary Rokita Applauds Grand Jury Indictments in Cemetery Fraud Case (July 15, 2008) (on file with author), http://www.in.gov/sos/securities/ 2854.htm (last visited Dec. 8, 2016).

. “The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.” U.S. Const, amend. XI.

. A case now before the Supreme Court may change that rule, see Manuel v. City of Joliet, No. 14-9496 (oral argument held Oct. 5, 2016), but as it stands now, a Fourth Amendment claim for malicious prosecution is unavailable ⅛ this circuit.

. The federal abuse-of-process claim is also a repackaged claim for malicious prosecution, so we do not need to separately address it.