**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted June 3, 2019[*]
Decided June 4, 2019

**Before**

JOEL M. FLAUM, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 17-3585

| | |
|---|---|
| JEREMY L. DALE,<br>    *Plaintiff-Appellant*, | Appeal from the United States<br>District Court for the Southern District<br>of Indiana, Indianapolis Division. |
| *v.* | No. 1:15-cv-0140-SEB-MPB |
| ANTHONY AGRESTA, et al.,<br>    *Defendants-Appellees*. | Sarah Evans Barker,<br>*Judge*. |

**O R D E R**

Anthony Agresta, a Marion County, Indiana sherriff's deputy, was transporting prisoner Jeremy Dale in a van without seatbelts when another car rear-ended the van. Dale was injured in the accident and was returned to the jail for medical treatment before being taken to a hospital. Dale sued Agresta, the Marion County Sheriff's Department, and the county sheriff under the Eighth Amendment, claiming that they were deliberately indifferent to both the excessive risk of harm caused by transporting

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

him without a seatbelt and to his medical needs after the accident. *See* 42 U.S.C. § 1983. The district court entered summary judgment for the defendants. Because Agresta is entitled to qualified immunity for transporting Dale without a seatbelt and did not personally prevent Dale from receiving medical care on the scene, we affirm the judgment in his favor. And because there is no evidence of a policy or custom of not providing seatbelts to inmates, we also affirm the entry of summary judgment for the sheriff's department.

Agresta was driving Dale, unrestrained by a seatbelt or safety harness, in a county transport van. Dale was handcuffed, and his waist and ankles were shackled. While the van was stopped at a traffic light, a car struck it from behind. The impact tossed Dale, and he banged his head before landing face down on the van's floor. He injured his back, face, and arms.

After the accident, Agresta put the van in park, turned on the emergency equipment, and radioed dispatch, which sent a medic. One of Agresta's supervisors, who had since arrived on the scene, turned away the medic and ordered Agresta to send Dale back to the jail for a medical evaluation. According to Dale, Agresta then leaned his body weight on Dale's back, "jerk[ed]" him out of the van, and carried him to a patrol car. The jail's medical staff evaluated Dale and referred him to an offsite hospital. Dale arrived at the hospital (this time in a vehicle with seatbelts) about one hour after the accident. X-rays revealed no broken bones, and medical staff gave Dale Ibuprofen and discharged him. Dale suffered pain and was diagnosed some time later with an injured disc in his back.

Dale filed suit, and after screening, *see* 28 U.S.C. § 1915A, he proceeded on three Eighth Amendment claims. First, he claimed that Agresta was deliberately indifferent to his safety by failing to provide him with a seatbelt. Second, he asserted that the sheriff's department and the sheriff in his official capacity (functionally the same defendant, *see Katz-Crank v. Haskett*, 843 F.3d 641, 646–47 (7th Cir. 2016)) maintained a policy or practice of transporting prisoners in vans without seatbelts. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690–91 (1978). (At summary judgment, he also argued that they inadequately trained the deputies to use seatbelts.) Third, Dale claimed that Agresta recklessly denied him medical care after the accident.

The district court granted the defendants' motion for summary judgment. The court ruled first that Agresta did not act with deliberate indifference as a matter of law because, without more, failing to secure a prisoner with a seatbelt "does not represent a total lack of concern." Moreover, the court continued, a jury could not find that the

one-hour delay in treatment caused Dale harm. It then determined that the *Monell* claim against the sheriff's department failed because Dale did not show an underlying Eighth Amendment violation. Finally, the court declined to assess Dale's claim of inadequate training because it was outside of the complaint's scope.

We review the district court's entry of summary judgment de novo, drawing all reasonable inferences in Dale's favor. *See Giles v. Godinez*, 914 F.3d 1040, 1048 (7th Cir. 2019). We will affirm if there is no genuine issue of material fact and may do so on any basis presented in the record. *See Figgs v. Dawson*, 829 F.3d 895, 902 (7th Cir. 2016).

On appeal, Dale argues first that Agresta's failure to provide him with a seatbelt constitutes deliberate indifference because it created an excessive risk of, and manifested in, a serious injury. Agresta responds (as he did when moving for summary judgment) that Dale had no right to a seatbelt under the Eighth Amendment, and that, alternatively, he is entitled to qualified immunity. Qualified immunity shields government officials from lawsuits for damages unless they violate a clearly established and specific constitutional right. *See Taylor v. Barkes*, 135 S. Ct. 2042, 2045 (2015).

We agree with the district court that Agresta is entitled to qualified immunity because Dale did not have a clearly established right to a seatbelt. True, the Eighth Amendment protects inmates from prison officials knowing of and disregarding excessive risks of future harm. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Helling v. McKinney*, 509 U.S. 25, 33 (1993). But that principle is too general to defeat qualified immunity. *See City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019) (discussing "right to be free of excessive force"). Neither the Supreme Court nor this court has ruled that transporting an inmate without a seatbelt creates an intolerable risk of harm. Indeed, when an arrestee who was unbuckled and escaped from the back seat of a squad car caused the accident that led to his death, we concluded that the failure to seatbelt him was, at most, negligent. *See Proffitt v. Ridgway*, 279 F.3d 503, 507 (7th Cir. 2002).

Moreover, other circuits have concluded that, without reckless driving or other exacerbating circumstances, failing to seat-belt a shackled inmate does not pose a substantial risk of serious harm. *See Jabbar v. Fischer*, 683 F.3d 54, 57–58 (2d Cir. 2012); *Spencer v. Knapheide Truck Equip. Co.*, 183 F.3d 902, 906–07 (8th Cir. 1999); *see also Thompson v. Commonwealth of Virginia*, 878 F.3d 89, 105 (4th Cir. 2017) (collecting cases). Dale lacks evidence that Agresta did anything to increase the risk of harm beyond transporting him in a van without seatbelts. Because we conclude that Dale did not have a clearly established right to a seatbelt, we need not consider whether Agresta violated that right. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Dale adds that Agresta recklessly increased Dale's risk of harm after the accident by declining help from a medical professional, removing him from the van, and failing to take him immediately to a hospital. But a jury could not find as much. Dale needed evidence that Agresta personally put him in harm's way. *See Palmer v. Marion Cty.*, 327 F.3d 588, 593–94 (7th Cir. 2003). The record, however, shows that after the accident, Agresta put the van in park, activated the emergency equipment, and radioed for help, bringing a medic to the area. A supervising deputy—not Agresta—declined the medic's assistance and ordered that Dale be transported back to the jail, rather than to a hospital. And though it might have been advisable to allow a medical professional to remove Dale from the van to another vehicle, Dale lacks any medical evidence that Agresta endangered him or caused harm by doing it himself.

Dale next argues that a jury could find in his favor on his *Monell* claim against the sheriff's department. We disagree. The department may be liable under § 1983 if its official policy or custom violates a plaintiff's constitutional rights. *See Monell,* 436 U.S. at 690–91; *Katz-Crank*, 843 F.3d at 647. Even if we assumed that the lack of seatbelt violated Dale's Eighth Amendment rights, Dale has not produced evidence that the sheriff's department did not provide seatbelts as a matter of policy. (Rather, Dale notes that the department's applicable policy requires deputies to exercise "due regard" for safe driving practices and to transport people only in vehicles that are "properly equipped and in functioning and safe condition.") One instance of negligence does not establish that a practice is so widespread and well-settled that it can properly be called a custom. *See Wragg v. Vill. of Thornton*, 604 F.3d 464, 468 (7th Cir. 2010). Thus, the fact that Dale once rode in a van without seatbelts, especially given that he was transported *with* a seatbelt on other occasions, is not enough to withstand summary judgment.

Finally, Dale asserts that a jury could conclude that the sheriff's department did not adequately train its deputies. Although inadequate training can be the basis for an Eighth Amendment claim, *see City of Canton v. Harris*, 489 U.S. 378, 387 (1989), the district court did not abuse its discretion by declining to consider a claim based on allegations that Dale did not include in the complaint. *See Chessie Logistics Co. v. Krinos Holdings, Inc.*, 867 F.3d 852, 860 (7th Cir. 2017); *Hancock v. Potter*, 531 F.3d 474, 480 (7th Cir. 2008). And even if Dale had preserved the claim, he only speculates that Agresta was inadequately trained to safely transport prisoners, and that is not enough to take the matter to trial. *See Lapre v. City of Chicago*, 911 F.3d 424, 435 (7th Cir. 2018).

The judgment of the district court is AFFIRMED.