> **NONPRECEDENTIAL DISPOSITION**
> To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

### For the Seventh Circuit
### Chicago, Illinois 60604

Argued July 10, 2019
Decided July 19, 2019

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

AMY C. BARRETT, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

No. 18-3228

| | |
|---|---|
| WAYNE OESTERLIN,<br> *Plaintiff-Appellant*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 14 CV 7473 |
| COOK COUNTY SHERIFF'S DEPARTMENT, et al.,<br> *Defendants-Appellees*. | Sidney I. Schenkier,<br>*Magistrate Judge*. |

## O R D E R

The Cook County Sheriff's Merit Board fired Wayne Oesterlin from his job with the Sheriff's Department. Oesterlin alleges that his firing was unconstitutional, though the precise nature of his arguments has fluctuated. A magistrate judge, presiding by consent, concluded at summary judgment that Oesterlin had pleaded only an equal protection claim that failed as a matter of law. On appeal, Oesterlin insists that the judge should have allowed him to proceed to a jury trial—or entered summary judgment in his favor—on many other theories. Among the claims that the judge deemed insufficiently pleaded was an allegation of First Amendment retaliation. Even

if the judge erred by excluding this claim, he correctly determined that Oesterlin had not demonstrated a disputed issue of fact. We therefore affirm the judgment.

Oesterlin was a deputy sheriff at the Skokie courthouse, where he had a reputation for complaining to supervisors about his coworkers. He sent out countless grievances and memoranda detailing other employees' misdeeds, including smoking, gambling, riding bicycles, mishandling firearms, and being generally rude. In addition to these complaints to supervisors, Oesterlin took evidence of his coworkers' gambling to the local news in October 2008.

But by that point, Oesterlin was under the investigation that would lead to his firing. In June 2007, his supervisor caught him performing an unauthorized search of a database—the Law Enforcement Agencies Data System (LEADS)—to check availability for eleven vanity plates. A year later, Oesterlin's supervisor again found him misusing LEADS, this time by searching his own name and firearm owner's identification number. Oesterlin denies the vanity-plate incident and maintains that he used his personal information to test his LEADS connection. Despite these protests, the Sheriff's Department de-deputized Oesterlin in August 2008 and reassigned him to a clerical job pending an investigation into his LEADS use.

The investigation lasted until December 2010, when the Sheriff ended Oesterlin's employment and filed charges with the Merit Board alleging that Oesterlin had misused LEADS and lied to investigators. Under Illinois law, an employee of the Sheriff's Department may not be fired unless he receives notice of charges from the Sheriff and a hearing before the Merit Board. *See* 55 ILCS 5/3-7012 (2018). At his hearing, Oesterlin sought discovery to develop an argument that he was being charged in retaliation for his grievances, but the Board denied this request because retaliatory motive was irrelevant to the question of guilt. In 2012, the Board found Oesterlin guilty and approved his dismissal effective December 27, 2010. Oesterlin challenged the Board's decision in state court but lost, and the Illinois Appellate Court upheld the Board's decision, including its discovery ruling. *Oesterlin v. Cook Cty. Sheriff's Merit Bd.*, 2015 IL App (1st) 141513-U, ¶¶ 40–50 (2015).

While Oesterlin's challenge to the Board's decision was proceeding through state court, he filed this federal case against the Sheriff's Department, Sheriff Thomas Dart in his official capacity, and Cook County (collectively "the Sheriff"). Oesterlin's initial complaint identified four counts: the first two alleged deprivation of property (his job) without due process, and the latter two alleged "discrimination based upon retaliation"

in violation of the Fourteenth Amendment. Count Three sought recovery under 42 U.S.C. § 1981 and the other counts, § 1983. The suit was stayed pending resolution of the state proceedings.

Once the Illinois Appellate Court issued its final decision (and the time lapsed to appeal to the Illinois Supreme Court), the stay was lifted; the Sheriff then moved to dismiss the federal suit. He argued that claim preclusion barred relitigation of the case and that § 1981 did not apply to state actors. The district judge, acting before the parties had consented to a magistrate judge, dismissed the first three counts of the complaint but concluded that the Merits Board had not given Oesterlin a "full and fair opportunity" to litigate the retaliation issue when it denied his discovery request; the judge therefore permitted that claim to proceed.[1]

After the partial dismissal, Oesterlin amended his complaint to add allegations that the Merit Board's decision was void because the Board's members served less than the six-year term that state law mandated, *see Taylor v. Dart*, 81 N.E.3d 1, 12 (Ill. App. Ct.), *appeal denied*, 89 N.E.3d 764 (Ill. 2017). Despite this amendment, Oesterlin continued to use only one label in the operative complaint, "Discrimination—Retaliation," to characterize his claim brought under the Equal Protection Clause, 42 U.S.C. § 1983, and *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

The parties then filed cross motions for summary judgment based on three theories that Oesterlin pressed. First, he argued that the Merit Board's decision to terminate him was void because the members had been appointed illegally (though he identified no federal dimension to this argument except to state that the Sheriff's acts "encroached upon [his] constitutional rights." Second, he contended that the Board violated his due process rights by not allowing him to raise his retaliation arguments in the hearing. And third, he maintained that the Sheriff violated his rights to free speech and equal protection of the law by singling him out for complaining about coworkers.

The magistrate judge granted the Sheriff's motion. The judge first rejected Oesterlin's equal protection and *Monell* theories—which it described as "the only claims plaintiff has actually pled"—because class-of-one theories do not extend to public employment, *see Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 594 (2008). Any policy of discrimination against a class of one thus could not have caused a constitutional injury

---

[1] The Sherriff has abandoned the preclusion defense on appeal, so we do not consider whether the district court decided that issue correctly.

under *Monell*. As for the First Amendment claim, the judge determined that Oesterlin had not included it in his complaint, which never mentioned his single incident of protected speech—his whistleblowing about the gambling. In any event, the court concluded that Oesterlin had no evidence to show that his report motivated his firing, especially given that he went to the media after the launch of the investigation into his LEADS use. And because the Sheriff was entitled to judgment as a matter of law on the retaliation theories, Oesterlin's due process claim regarding the Merit Board's discovery ruling likewise failed. Finally, the judge accepted that the Board's decision was void under state law but declined to provide a remedy beyond either what was alleged in the complaint or the court's jurisdiction. Any relief Oesterlin might seek, the judge said, had to be addressed in state court.

On appeal, Oesterlin identifies many perceived flaws with the magistrate judge's decision but does not develop these criticisms into a coherent argument. Nevertheless, we discern from his brief several legal theories for which, he argues, the judge overlooked evidence in his favor. In Oesterlin's view, the record shows that the Sheriff violated (1) the Equal Protection Clause by discriminating against him based on (a) his membership in a class of one, (b) his race, or (c) his sex; (2) the First Amendment by retaliating against his protected speech; or (3) the Due Process Clause by (a) performing a hearing before an improperly constituted Merit Board or (b) refusing—through the Board's discovery ruling—to allow him to argue retaliation in his hearing. Because he sued only Cook County, its Sheriff's Department, and the Sheriff in his official capacity, all of which are effectively the county, *see Katz-Crank v. Haskett*, 843 F.3d 641, 646 (7th Cir. 2016), he frames each violation as the result of a policy for purposes of *Monell*. We need not reach the *Monell* issue, though, because we agree with the magistrate judge that there were no constitutional violations in the first place. *See Schor v. City of Chicago*, 576 F.3d 775, 779 (7th Cir. 2009).

We begin with Oesterlin's equal protection theories. The magistrate judge correctly recognized that the Supreme Court has refused to extend class-of-one theories to the public employment context. *See Engquist*, 553 U.S. at 594. Oesterlin mounts two challenges to *Engquist*—first, that the decision is not binding on this court because the decision was neither unanimous nor from this circuit, and second that the case was wrongly decided. The former is frivolous, and the latter is not appropriately addressed to this court. For the first time on appeal, he also tries to suggest that he has a race-discrimination or sex-discrimination claim that is not limited by *Engquist*, but he does not develop this argument, let alone provide any evidence to connect his race (white) or sex (male) to his firing.

Oesterlin next argues that the judge erred in concluding that he did not plead a First Amendment claim. He insists that he was free to introduce this claim only at summary judgment based on what he learned from discovery. The judge, however, rightly rejected this argument because Oesterlin did not discover his own whistleblowing through the Sheriff.[2]

Nevertheless, even if the First Amendment claim was adequately alleged, the magistrate judge correctly concluded that it was too undeveloped to survive summary judgment. Oesterlin was required to marshal enough evidence for a rational jury to find that (1) he engaged in protected speech; (2) he suffered a deprivation because of the Sheriff's action; and (3) his protected speech was a but-for cause of that action. *Milliman v. Cty. of McHenry*, 893 F.3d 422, 430 (7th Cir. 2018). Even now, he falters on the third element. Although he asserts that he engaged in a single instance of protected speech and that he was fired, he provides nothing to connect these two facts. Nor does he challenge the magistrate judge's account of the relevant timeline, in which the investigation started months before and ended years after Oesterlin reported the gambling to the news. For that matter, Oesterlin also does not provide any evidence to rebut as pretextual the Sheriff's story that he was fired for misusing LEADS and lying. *See id.* at 434. The most he offers is that his speech must have caused his firing, because the Merit Board, through its discovery ruling, refused to hear about it. But this argument is self-defeating. Even were the Sheriff's or the investigators' retaliatory animus clear, Oesterlin has no evidence tending to show that their motive tainted the

---

[2] Although he properly resolved Oesterlin's discovery-based argument, we point out that the judge otherwise held Oesterlin to the wrong pleading standard. The judge, endorsing an argument pressed by the Sheriff, rejected the First Amendment claim because the complaint cited only the Equal Protection Clause and mentioned only internal grievances, which are not protected speech, *see, e.g.*, *Forgue v. City of Chicago*, 873 F.3d 962, 967 (7th Cir. 2017). But neither of these omissions is fatal under federal notice pleading standards. Under notice pleading, a complaint need not identify a legal theory or even facts corresponding to every legal element or factor relevant to a claim, *see Johnson v. City of Shelby*, 574 U.S. 10 (2014); *Chapman v. Yellow Cab Coop.*, 875 F.3d 846, 848 (7th Cir. 2017). Here, Oesterlin apprised the Sheriff of his claim when he alleged that he was fired for protesting his coworkers' gambling (among other things). He was not required, in his complaint, to cite the First Amendment or specify that his protests were protected speech.

Board's ultimate decision to fire him. *See Staub v. Proctor Hosp.*, 562 U.S. 411, 415–22 (2011) (discussing "cat's paw" theory).

Next Oesterlin argues that the magistrate judge disregarded his argument that the Merit Board's decision was void because the Board's members were appointed for less than six-year terms in violation of state law. *See* 55 ILCS 5/3-7002 (2017); *Taylor v. Dart*, 81 N.E.3d at 8, 12. Only in his reply brief does he finally frame the Sheriff's acts as a federal constitutional violation—he argues that entry of a decision that is void under state law is inconsistent with due process. But § 1983 and the Due Process Clause do not provide a remedy for violations of state law. *See, e.g.*, *Archie v. City of Racine*, 847 F.2d 1211, 1216–17 (7th Cir. 1988) (en banc). Due process is a federal standard, independent of any procedure guaranteed by state law, *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985), and Oesterlin points to no federal standard governing the length of state administrators' terms.

Finally, Oesterlin insists that the magistrate judge ignored the district judge's ruling that the Sheriff denied him a "full and fair opportunity" to litigate his retaliation claim before the Merit Board; he frames this lack of opportunity as an independent violation of his due process rights. For this argument, Oesterlin relies on *White v. Elrod*, 816 F.2d 1172, 1175 (7th Cir. 1987), in which we opined that the Merit Board violates the Supremacy Clause and state law when it refuses to consider constitutional arguments. Oesterlin, however, glosses over our conclusion in *White*: "for such a mistake"—just as for the void decision—"the remedy is an appeal to the state courts," *id*. In any event Oesterlin has litigated his retaliation claim in federal court and has failed to show even a genuine dispute of fact—the Merit Board did not violate the Constitution by prohibiting his presentation of a doomed argument.

AFFIRMED