NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted August 19, 2019*
Decided August 19, 2019

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 18-1324

| | |
|---|---|
| LORENZO WILSON, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Central District of Illinois. |
| | |
| *v.* | No. 4:15-cv-04078 |
| | |
| JAMES RUNDLE, et al., | Michael M. Mihm, |
| *Defendants-Appellees*. | *Judge*. |

**O R D E R**

Lorenzo Wilson, an Illinois inmate, appeals from the entry of summary judgment in this suit asserting that two officials at Hill Correctional Center and one official at Pontiac Correctional Center conspired to retaliate against him in violation of the First Amendment. We affirm the judgment.

---

* We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

According to Wilson's complaint, this case traces back to a lawsuit he filed in 2010 against James Rundle, the Dietary Manager at Hill, for failing to provide him an adequately nutritious diet. That suit was still pending in July 2013, when Wilson was assigned to a job in Hill's dining room. About a month later, Wilson approached the Hill official who had assigned him the job, Anthony Buckley, and expressed concern that he would be fired because of the earlier lawsuit. Buckley told Wilson not to worry. Sometime in September, Wilson approached Rundle and asked for a change in schedule, a pay raise, and a settlement for his lawsuit. Rundle did not respond.

Later that month, correctional officers removed Wilson from his cell without warning and brought him to Buckley on emergency transfer orders. Buckley told Wilson he was "sending [Wilson] away from here." Wilson's destination turned out to be Pontiac Correctional Center, where he immediately was placed in segregation. The next day, he received a copy of a disciplinary report accusing him of "security threat group activities"—namely, being a leader of the Gangster Disciples at Hill. The report had been prepared by Buckley, now an intelligence officer at Hill, who explained that confidential sources had fingered Wilson for holding meetings, collecting dues, and passing messages on behalf of the Gangster Disciples. Wilson denies any gang affiliation, but a Pontiac disciplinary committee found him guilty based on Buckley's report and punished him with three months' segregation (among other penalties).

After serving his three months in segregation, Wilson expected to be transferred to another prison, but he instead was kept at Pontiac—in administrative detention—allegedly on orders of Pontiac's Lieutenant Ed Vilt, who, Wilson says, had placed him there without regard to prison rules.

Based on these facts, Wilson sued Rundle, Buckley, and Vilt for conspiring against him in retaliation for his speech—the 2010 lawsuit against Rundle. *See* 42 U.S.C. § 1983. The district judge screened the complaint, 28 U.S.C. § 1915A, and dismissed the claims against Vilt without prejudice because they were unrelated to the claims against Rundle and Buckley. *See* FED. R. CIV. P. 20(a)(2); *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). The judge permitted Wilson to proceed on his claims that Rundle and Buckley retaliated and conspired to retaliate against him for filing the prior lawsuit.

Wilson then amended his complaint to streamline his claims and clarify that Vilt had acted "on behalf of defendant Buckley" when placing him in detention. The judge again screened the claims against Vilt, explaining that they belonged in a separate lawsuit. Wilson's conclusory statements were not enough, the judge explained, to show

that the claims were properly joined. Wilson sought once more to amend his complaint, but the judge denied the request.

After discovery, Wilson again tried to join Vilt as a defendant, but the judge refused this request, too. Rundle and Buckley then moved for summary judgment.

The district judge granted their motion. As the judge explained, the undisputed evidence, which largely tracked Wilson's complaint, showed that Rundle was not involved with the investigation that led to Wilson's transfer. And though Buckley prepared the disciplinary report that led to the transfer, there was no evidence that he did so to retaliate against Wilson for filing a lawsuit. Wilson's mere speculation, the judge said, was not enough to bring his retaliation claims to a jury.

On appeal, Wilson challenges the district judge's decision at screening to dismiss Vilt as a defendant. He contends that he pleaded a plausible conspiracy claim linking Vilt and Buckley based on *Walker v. Thompson*, 288 F.3d 1005, 1007 (7th Cir. 2002), in which we held that "it is enough in pleading a conspiracy merely to indicate the parties, general purpose, and approximate date."

The district judge rightly dismissed the claims against Vilt which were related only by the sort of "bare allegation of conspiracy" that we rejected in *Walker*. *Id.* at 1008. Wilson accused Vilt of acting "on behalf of" or "in conjunction with" Buckley but offered no elaboration except that Vilt had not complied with prison procedures. These allegations are simply too conclusory to plead a conspiracy between Vilt and Buckley. *See Hess v. Kanoski & Assocs.*, 668 F.3d 446, 456 (7th Cir. 2012) (rejecting, as insufficient to state a claim, allegations that "defendants combined with each other to commit unlawful acts"). Without a plausible conspiracy to link the defendants, the judge properly directed Wilson to bring his procedural claims against Vilt in another suit.[1]

Regarding the summary-judgment ruling, Wilson first argues that the judge overlooked evidence from which a jury could infer that Rundle was involved in the transfer. He points to a fellow prisoner's declaration, which states that Rundle would have needed to assign a new prisoner to cover Wilson's shifts. But a jury could infer

---

[1] Wilson did file a federal civil-rights suit against Vilt relating to his placement in detention but lost at summary judgment. *See Lorenzo v. Pfister*, No. 15-1506-SLD, 2017 WL 3197730 (C.D. Ill. July 27, 2017).

nothing material from this evidence: that Rundle would have to prepare for Wilson's absence is not even circumstantial evidence that he caused it.

Wilson next argues that the district judge erred in weighing the evidence for and against Buckley. In his view, the legitimacy of Buckley's disciplinary report was a matter for the jury, which would have ample reason to discredit it and believe him innocent. He contends that he was never told he was under investigation, was never interviewed, and was transferred before receiving notice of the charges. Moreover, the report relies on confidential sources, whom, Wilson maintains, the jury could discredit because the report did not identify them or reflect everything they said.

Even if a jury credited Wilson's testimony that he was not a gang member, there is no evidence from which it could infer that his lawsuit was a "motivating factor" in the decision to transfer him. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). Wilson's mere speculation that retaliation could be the only explanation is not enough to carry his burden at summary judgment. *See Devbrow v. Gallegos*, 735 F.3d 584, 588 (7th Cir. 2013); *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008) (recognizing that challenges to defendant's credibility are not enough to show retaliation). Beyond his speculation, Wilson provides only what he calls a "suspicious chronology of events." But suspicious timing by itself is rarely enough to survive summary judgment in retaliation cases. *See Kidwell v. Eisenhauer*, 679 F.3d 957, 966 (7th Cir. 2012). And here the timing is hardly suspicious: Wilson was transferred three years after his suit. Wilson contends that he was transferred shortly after he offered to settle but has presented no evidence that Buckley even knew of this offer, through Rundle or otherwise.

We need not address separately Wilson's arguments relating to his conspiracy claims. A conspiracy under § 1983 rises and falls with the alleged constitutional violation. *See Katz-Crank v. Haskett*, 843 F.3d 641, 650 (7th Cir. 2016). Summary judgment was proper on the retaliation claims, so it was also proper on the conspiracy claims.

Next, regarding discovery, Wilson challenges the court's denial of his motion to compel Rundle to respond to two requests to admit. He asked Rundle to admit that he was given a settlement offer and that he had approved the requested pay raise and schedule change. But even if Wilson could show that the judge abused his broad discretion over discovery matters, he fails to demonstrate how the refusal to answer either request led to "actual and substantial prejudice." *See Kuttner v. Zaruba*, 819 F.3d 970, 974 (7th Cir. 2016). The settlement offer was within Wilson's personal knowledge and included in his sworn declaration, so for the purposes of this appeal we assume

that it happened. And we, like the district court, cannot see the relevance of the raise and schedule change to Wilson's claims of a retaliatory transfer.

Finally, Wilson challenges the district judge's denials of his motions for recruitment of counsel. He criticizes the judge for citing lawsuits in which he had recruited counsel to demonstrate his litigation experience. But the judge did not rely only on Wilson's history in other suits; he based his ruling on the quality of Wilson's pleadings and performance in discovery in *this* case. These were appropriate considerations, *see Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007) (en banc), and the judge reasonably found them to reflect Wilson's competence.

AFFIRMED